# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| KEVIN LEE BROWN, | ) | Case No. EDCV 14-2421-CJC (JEM) |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | MEMORANDUM AND ORDER |
| v. | ) | DISMISSING COMPLAINT WITH LEAVE |
|  | ) | TO AMEND |
| PEREZ, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

Kevin Lee Brown ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in

1   the light most favorable to the plaintiff.  Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

2   1988).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

3   allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of

4   a civil rights complaint may not supply essential elements of the claim that were not initially

5   pled."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

6        Although a complaint "does not need detailed factual allegations" to survive

7   dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic

8   recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly,

9   550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in

10  Conley v. Gibson, 355 U.S. 41 (1957)).  The complaint must contain factual allegations

11  sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely

12  possible or conceivable.  Id. at 557, 570.

13       Simply put, the complaint must contain "enough facts to state a claim to relief that is

14  plausible on its face."  Twombly, 550 U.S. at 570.  A claim has facial plausibility when the

15  complaint presents enough facts "to draw the reasonable inference that the defendant is

16  liable."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This standard is not a probability

17  requirement, but "it asks for more than a sheer possibility that a defendant has acted

18  unlawfully."  Id.   A complaint that pleads facts that are merely consistent with liability stops

19  short of the line between possibility and plausibility.  Id.

20       In a pro se civil rights case, the complaint must be construed liberally to afford

21  plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,

22  623 (9th Cir. 1988).  Unless it is clear that the deficiencies in a complaint cannot be cured,

23  pro se litigants are generally entitled to a notice of a complaint's deficiencies and an

24  opportunity to amend prior to the dismissal of an action.  Id. at 623.  Only if it is absolutely

25  clear that the deficiencies cannot be cured by amendment should the complaint be

26  dismissed without leave to amend.  Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir.

27  2007).

28

1    After careful review and consideration of the Complaint under the relevant standards

2    and for the reasons discussed below, the Court finds that the Complaint must be

3    **DISMISSED WITH LEAVE TO AMEND.**

4                              **ALLEGATIONS OF COMPLAINT**

5    Plaintiff's claims arise out of his confinement at the California Institution for Men

6    ("C.I.M."). He has sued the following C.I.M. officials in their official and individual capacities:

7    Perez, warden; and Dr. Kirk Torres, primary care physician. (Complaint at 3.)

8    Plaintiff alleges that on October 6, 2012, at about 10:00 a.m., he was playing

9    basketball in the B-yard basketball court. (Complaint, Attachment at 2-3.)[1] Plaintiff explains

10   that the basketball court pavement was "broken up in huge spots all over the courtyard."

11   (Id. at 3.) Plaintiff jumped up and his foot went into a hole in the pavement, causing him to

12   fall backwards. (Id.) Plaintiff immediately felt a painful tear in his left knee and noticed a

13   deformity in his left knee cap. (Id.) The other inmates around Plaintiff immediately started

14   to yell "man down!" and Plaintiff was transported to Moreno Valley State Hospital ("MVSH").

15   (Id.)

16   Plaintiff's emergency room ("ER") doctor at MVSH ordered x-rays. (Id. at 3.) Plaintiff

17   was later told that his left knee was only dislocated, which was the wrong diagnosis. (Id.)

18   Plaintiff was given morphine and his knee was "re-set and popped back into its original

19   place." (Id.)

20   After being discharged from MVSH and on his way back to C.I.M., Plaintiff's knee cap

21   popped back out of position. It was "set in" at MVSH. (Id. at 3.)

22   Upon his return to C.I.M., Plaintiff was taken to the infirmary pursuant to the protocol

23   when returning from an off-site hospital stay. (Id. at 3.) Medical staff gave Plaintiff a knee

24   brace and crutches "while waiting to be cleared to return to [his] housing unit." (Id.)

25

26

27

28       [1] For ease of reference, the Court labels and refers to the pages in the Attachment to the
Complaint in consecutive order, i.e., 1-6.

3

When Plaintiff woke up the next morning, he was in "excruciating pain" and his knee cap was the size of a soft ball.  Plaintiff could not bend his knee cap and "its functioning was off set when [he] tried to move it back and forth normally."  (Id. at 3.)

Plaintiff immediately put in a sick call slip and waited "several agonizing days to see [his] assigned primary care provider . . . , Defendant . . . Torres."  (Id. at 3-4.)  Defendant Torres instructed Plaintiff to "put ice on [his knee]."  (Id. at 4.)  Plaintiff was "in shock" and he immediately filed an "ADA health care appeal" to see an arthroscopic specialist.  (Id.)

Plaintiff saw an arthroscopic specialist, Dr. Hendricks, on January 23, 2013.  He recommended surgical treatment for the left patellar tendon rupture Plaintiff suffered when he stepped into the hole in the broken up pavement on the B-yard basketball court on October 6, 2012.  (Id. at 4.)

On May 28, 2013, three months after the first surgery Plaintiff received to repair his left knee, Dr. Hendricks informed Plaintiff that he needs further surgery to repair the left patellar tendon rupture "caused by the hazardous living conditions at C.I.M."  (Id. at 4.)

Plaintiff asserts violations of the Eighth Amendment right to be free from cruel and unusual punishment against Defendants Perez and Torres.  Specifically, Plaintiff claims Defendant Perez is responsible for the safety and welfare of inmates housed at C.I.M. and acted with deliberate indifference to Plaintiff's safety by "leaving the conditions of confinement [at] []CIM[] in the hazardous way he did that left plaintiff . . . disabled and the physical injury so [ex]tensive that he had two (2) . . .  reconstructive surgeries of the left knee."  (Id. at 4-5.)  Moreover, Plaintiff claims Defendant Torres breached the standard of care and acted with deliberate indifference to Plaintiff's serious medical needs by mis-diagnosing Plaintiff's left knee injury and leaving him in severe pain for months before seeing a specialist, as well as for not following the specialist recommendation for narcotic pain medication after surgery.  (Id. at 4-5.)  Plaintiff seeks damages, declaratory relief, and

1   injunctive relief, including compensation for "anyone else" who was hurt by the unsafe living

2   conditions at C.I.M.[2]   (Id. at 5-6.)

3                                   **DISCUSSION**

4   **I.    PLAINTIFF MUST NAME ALL DEFENDANTS IN THE CAPTION**.

5          Plaintiff's caption lists only C.I.M. (Complaint at 1.)  On page 3 of the Complaint,

6   however, Plaintiff lists the defendants in this action as Perez and Torres.  The individuals

7   named as "defendants" only in the body of the Complaint have not been presented properly

8   as parties, and the Court does not recognize them as defendants in this action.  If Plaintiff

9   files an amended complaint, he **must include in the caption the names of each**

10  **defendant against whom he is asserting a claim**.  See Fed. R. Civ. P. 10(a); Local Rule

11  11-3.8(d); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262-63 (9th Cir. 1992) (dismissing

12  action for refusal to comply with court orders to name defendants in the caption).  The Court

13  will not order the United States Marshal to serve the amended complaint on any named

14  defendant not identified in the caption.

15  **II.   PLAINTIFF FAILS TO STATE A CLAIM FOR INADEQUATE MEDICAL CARE**.

16         The state must provide medical care to prisoners, because their incarceration has

17  deprived them of the ability to secure medical care for themselves.  Estelle v. Gamble, 429

18  U.S. 97, 103 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).  Failure

19  to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth

20  Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs.

21  Estelle, 429 U.S. at 104

22         A determination of "deliberate indifference" involves an examination of two elements:

23  the seriousness of the prisoner's medical need and the nature of the defendant's response

24  to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other

25  grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc).  A

26  serious medical need exists if failure to treat the condition could result in further significant

27  _____

28         [2] However, Plaintiff, who is proceeding pro se in this matter, cannot appear on behalf of any
    other person.  28 U.S.C. § 1654.

injury or the unnecessary and wanton infliction of pain.  McGuckin, 974 F.2d at 1059.

Examples of serious medical needs include: '[t]he existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of

a medical condition that significantly affects an individual's daily activities; or the existence

of chronic and substantial pain."  Id. at 1059-60.

Deliberate indifference requires that defendants purposefully ignore or fail to respond

to the prisoner's pain or medical need.  McGuckin, 974 F.2d at 1060.  Deliberate

indifference "may appear when prison officials deny, delay or intentionally interfere with

medical treatment, or it may be shown in the way in which prison physicians provide medical

care."  Id. at 1059; see Estelle, 429 U.S. at 104-05.  However, an inadvertent or negligent

failure to provide medical care does not constitute deliberate indifference.  Estelle, 429 U.S.

at 105-06.  When medical treatment is delayed rather than denied, the delay generally

amounts to deliberate indifference only if it caused further harm.  Wood v. Housewright, 900

F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989);

Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); see

also Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delayed dental care did not violate

Eighth Amendment because plaintiffs did not show that "delays occurred to patients with

problems so severe that delays would cause significant harm").

Plaintiff's inadequate medical care claim rests on his allegation that Dr. Torres failed

to properly diagnose Plaintiff's left knee injury, causing him to wait months in "severe pain"

to see a specialist. (Complaint, Attachment at 2-5.)  Specifically, the allegations show that

Plaintiff was transported to the ER at MVSH immediately after his injury, where the medical

staff diagnosed a dislocated left knee, "re-set and popped [Plaintiff's knee] back into its

original place", and gave Plaintiff Morphine.  (Complaint, Attachment at 3; Id., Exhibit

("Exh.") D-1.) Upon his return to C.I.M., Plaintiff was taken to the infirmary and was given a

knee brace and crutches.  (Id.)  Plaintiff saw Dr. Torres "several agonizing days" later after

putting in a sick call slip due to "excruciating pain" and reduced mobility in the left knee.

(Id.)  Defendant Torres instructed Plaintiff to "put ice on [his knee]."  (Id. at 3-4.)  Plaintiff

1   filed an "ADA health care appeal" to see an arthroscopic specialist on December 19, 2012.

2   (Id. at 4 & Exh. C-3) On January 11, 2013, Dr. Torres saw Plaintiff for a medical verification

3   of disability and referred him to an Arthroscopic Specialist for evaluation and possible

4   surgery.  (Id., Exh. C-1.)

5          Plaintiff fails to allege that Defendant Torres' actions amounted to deliberate

6   indifference. At most, Plaintiff has alleged that Torres' diagnosis and treatment of Plaintiff

7   was negligent. Establishing negligence is not sufficient to state an Eighth Amendment claim.

8   Plaintiff does not allege that Torres deliberately mis-diagnosed Plaintiff knowing that it would

9   pose an excessive risk to his health. Plaintiff fails to state a cognizable claim against

10  Defendant Torres for violating the Eighth Amendment based on his failure to properly

11  diagnose Plaintiff's left knee injury.  See Estelle, 429 U.S. at 105-06 ("Medical malpractice

12  does not become a constitutional violation merely because the victim is a prisoner"); Lopez

13  v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also Farley v. Capot, 2010 WL 2545710,

14  at *1 (9th Cir. 2010) (failure to diagnose source of inmate's abdominal pain did not rise to

15  the level of deliberate indifference); Ruvalcaba v. City of L.A., 167 F.3d 514, 525 (9th Cir.),

16  cert. denied, 528 U.S. 1003 (1999) (failure to diagnose arrestee's broken ribs constituted at

17  best negligence, not deliberate indifference).

18         Moreover, Plaintiff claims Dr. Torres did not follow the specialist recommendation for

19  narcotic pain medication after surgery.  However, Plaintiff's allegations and the medical

20  records attached to the Complaint bely any finding of deliberate indifference.  On the date of

21  Plaintiff's knee surgery, February 12, 2013, Dr. Hendricks prescribed treatment with narcotic

22  pain medication for four weeks. (Complaint, Exh. A at 15.)[3]  On February 19, 2013, one

23  week after the surgery, Dr. Hendricks reported that Plaintiff "states that he has not been

24  prescribed narcotic pain medication, which was recommended on his post-operative note[,]"

25  and further prescribed narcotic pain medication for a further 3 weeks.  (Complaint, Exh. A at

26  19.)  A medical progress note dated March 4, 2013, and signed by Dr. Torres indicates that

27  ────────────

28         [3]  For ease of reference, the Court labels and refers to the pages in Exhibit A to the Complaint in consecutive order, i.e., 1-23.

Plaintiff's pain "has been relieved by Tylenol with Codeine", and further provides that Plaintiff "will continue on Tylenol with Codeine as needed for pain." (Id., Exh. A at 17.)  A March 18, 2013, medical consultation note by Dr. Hendricks indicates that Plaintiff "reports no new problems." (Id., Exh. A at 20.)  A March 28, 2013, medical progress note by Dr. Torres indicates that Plaintiff is to "[c]ontinue Tylenol with Codeine as needed for pain." (Id., Exh. A at 18.)  On April 2, 2013, Dr. Hendricks noted that Plaintiff "has no new complaints." (Id., Exh. A at 20.)  On April 11, 2013, Dr. Pollick noted in a medical progress note that Plaintiff "is taking Tylenol No. 3 for his pain control.  He was placed on this after the surgery and requested that this be continued while he is undergoing physical therapy.  Right now it is due to expire on April 30, 2013, and I have extended it for 1 more month." (Id., Exh. A at 23.)  On April 16, 2013, Dr. Hendricks recommended "treat[ing] any complaints of pain with anti[-]inflammatory medication." (Id., Exh. A at 16.)  On April 23, 2013, Dr. Torres reported that Plaintiff "is taking Tylenol which helps with his pain[,]' and noted that Plaintiff will "also ha[ve] Tylenol with Codeine tapered and discontinue[d] in 7 days." (Id., Exh. A at 21.)

In sum, the medical records attached to the Complaint show Dr. Torres did not disregard Dr. Hendricks' recommendation to treat Plaintiff with narcotic pain medication. Instead, Plaintiff's allegations and the medical records show that, other than one week after surgery when Plaintiff alleges he did not receive narcotic pain medication, Plaintiff received such treatment after the February 12, 2013, surgery through the end of April 2013, consistent with Dr. Hendricks' recommendation.  Plaintiff does not allege that Torres deliberately briefly withheld narcotic pain medication for one week knowing that it would pose an excessive risk of harm to Plaintiff.  Nor has Plaintiff alleged that Dr. Torres had control over when and how the narcotic pain medication was administered to inmates during that first week after the February 2013 surgery.  Plaintiff fails to state a cognizable claim against Defendant Torres for violating the Eighth Amendment based on his failure to follow the specialist recommendation for narcotic pain medication after surgery.

Accordingly, Plaintiff's denial of medical care claim does not survive screening. Because Plaintiff appears pro se and has not had a prior opportunity to amend his claims,

1   the Court dismisses the Complaint with leave to amend.  To the extent Plaintiff wishes to

2   amend his Complaint, he should set forth specific facts to support his denial of medical care

3   claim.  Conclusory statements of the elements of Plaintiff's § 1983 claim are insufficient to

4   satisfy Iqbal.

5   **III.   PLAINTIFF FAILS TO STATE A CONDITIONS OF CONFINEMENT CLAIM.**

6          The Eighth Amendment's prohibition against cruel and unusual punishment imposes

7   duties on prison officials to "provide humane conditions of confinement."  Farmer v.

8   Brennan, 511 U.S. 825, 832 (1994).  "[P]rison officials must ensure that inmates receive

9   adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

10  guarantee the safety of the inmates.'"  Id. (citation omitted).  Establishing a violation of the

11  Eighth Amendment requires a two-part showing.

12         First, an inmate must objectively show that he was deprived of something "sufficiently

13  serious."  Id. at 834.  A deprivation is sufficiently serious when the prison official's act or

14  omission results "in the denial of 'the minimal civilized measure of life's necessities.'"  Id.

15  (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); see Hudson v. McMillian, 503

16  U.S. 1, 9 (1992).  "[R]outine discomfort inherent in the prison setting" does not rise to the

17  level of a constitutional violation.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006); see

18  also Hudson, 503 U.S. at 9.

19         Second, the inmate must make a subjective showing that the deprivation occurred

20  with deliberate indifference to the inmate's health or safety.  Farmer, 511 U.S. at 834 (citing

21  Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)); see also Foster v. Runnels, 554 F.3d 807,

22  812 (9th Cir. 2009).  As previously mentioned, deliberate indifference is a higher standard

23  than negligence or lack of ordinary due care for the prisoner's safety.  Farmer, 511 U.S. at

24  835; see also Clement v. California Dep't of Corrections, 220 F.Supp.2d 1098, 1105 (N.D.

25  Cal. 2002) ("Neither negligence nor gross negligence will constitute deliberate

26  indifference.").  Instead, in order to state a claim for violation of the Eighth Amendment, the

27  plaintiff must allege facts sufficient to support a claim that prison officials knew of and

28

1  disregarded a substantial risk of serious harm to the plaintiff.  See, e.g., Farmer, 511 U.S. at

2  847.

3        Claims regarding slippery floors, without more, "do not state even an arguable claim

4  for cruel and unusual punishment." Jackson v. Arizona, 885 F.2d 639, 641 (9th Cir. 1989),

5  superseded by statute on other grounds as stated in Lopez, 203 F.3d at 1130-31; see also

6  Robinson v. Cuyler, 511 F.Supp. 161, 163 (E.D. Pa. 1981) ("A slippery kitchen floor does

7  not inflict 'cruel and unusual punishments.'" (citation omitted)); Tunstall v. Rowe, 478 F.

8  Supp. 87, 88-89 (N.D. Ill. 1979) (greasy staircase that caused prisoner to slip and fall did not

9  violate the Eighth Amendment); Snyder v. Blankenship, 473 F.Supp. 1208, 1209-10, 1212

10  (W.D. Va. 1979) (leaking dishwasher which caused prisoner to slip and fall did not violate

11  Eighth Amendment).  Instead, to state a cognizable claim for relief, there must be a

12  confluence of exacerbating conditions such that the slippery floor posed a serious,

13  unavoidable threat to plaintiff's safety.  See Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir.

14  1998) ("[s]lippery floors without protective measures could create a sufficient danger to

15  warrant relief" when an inmate alleges facts that exacerbate the danger resulting from such

16  conditions); Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996) (a single, minor safety

17  hazard does not violate the Eighth Amendment but allegations of conditions which

18  "exacerbate[] the inherent dangerousness of already-existing hazards" or "render[] [an

19  inmate] unable to provide for his own safety" are sufficient to state a cognizable claim for

20  relief (internal quotations, brackets and citation omitted)).

21        Plaintiff alleges that Defendant Perez is responsible for the safety and welfare of

22  inmates housed at C.I.M. and acted with deliberate indifference to Plaintiff's safety by

23  "leaving the conditions of confinement [at] []CIM[] in the hazardous way he did that left

24  plaintiff . . . disabled and the physical injury so [ex]tensive that he had two (2) . . .

25  reconstructive surgeries of the left knee."  (Complaint, Attachment at 4-5.)  Plaintiff explains

26  that the basketball court pavement was "broken up in huge spots all over the courtyard."

27  (Id. at 3.)  On October 6, 2012, Plaintiff jumped up and his foot went into a hole in the

28  pavement, causing him to fall backwards and injure his left knee.  (Id.)  Plaintiff alerted the

1  staff at C.I.M. that the broken up asphalt all over the Facility-A yard would cause injuries

2  before his October 6, 2012, fall.  (Id., Exh. A at 14.)

3          Plaintiff alleges no facts or exacerbating circumstances that could elevate this simple

4  negligence claim into a federal cause of action.  See Reynolds v. Powell, 370 F.3d 1028,

5  1031 (10th Cir. 2004) ("Simply put, a slip and fall, without more, does not amount to cruel

6  and unusual punishment . . . .  Remedy for this type of injury, if any, must be sought in state

7  court under traditional tort law principles." (internal quotations, brackets and citation

8  omitted)); Frost, 152 F.3d at 1129; Osolinski, 92 F.3d at 938; Farmer, 511 U.S. at 835-36 &

9  n.4.  In sum, Plaintiff fails to state a cognizable Eighth Amendment claim based on his fall

10  on the broken up pavement at C.I.M.  See, e.g., Wallace v. Haythorne, 2007 WL 3010755,

11  at *2-*4 (E.D. Cal. 2007) (finding no Eighth Amendment violation when prisoner fell after his

12  foot slipped into a hole in the floor caused by a missing tile, even if defendants were aware

13  that a non-prisoner employee had previously tripped on one of the holes); Andrillion v. Stolc,

14  2011 WL 2493655, at *2 & *4 (D. Ariz. 2011) (failure to provide workboots to prisoner when

15  working in wet and slippery conditions in the kitchen resulting in prisoner slipping and falling

16  and injuring himself failed to raise a cognizable claim for relief); Aaronian v. Fresno County

17  Jail, 2010 WL 5232969, at *2 & *3 (E.D. Cal. 2010) (allegation that plumbing leak caused

18  pool of water resulting in plaintiff slipping and falling does not raise cognizable conditions of

19  confinement claim).

20          Accordingly, Plaintiff's conditions of confinement claim does not survive screening.

21  Because Plaintiff appears pro se and has not had a prior opportunity to amend his claims,

22  the Court recommends that the Complaint be dismissed with leave to amend.  To the extent

23  Plaintiff wishes to amend his Complaint, he should set forth specific facts to support his

24  conditions of confinement claim.  Conclusory statements of the elements of Plaintiff's § 1983

25  claim are insufficient to satisfy Iqbal.

26  / / /

27  / / /

28

## IV.     PLAINTIFF'S OFFICIAL-CAPACITY CLAIMS AGAINST DEFENDANTS ARE BARRED UNDER THE ELEVENTH AMENDMENT.

The Defendants are California Department of Corrections and Rehabilitation ("CDCR") officers who are sued in their individual and official capacities.  In Will v. Michigan Department of State Police, 491 U.S. 58, 64-66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983.  The Supreme Court reasoned that a suit against a state official in his or her official capacity is a suit against the official's office, and as such is no different from a suit against the State itself, which would be barred by the Eleventh Amendment.  See id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995).  "[T]he [E]leventh [A]mendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages . . . ."  Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).  However, the Eleventh Amendment "does not preclude a suit against state officers for prospective relief from an ongoing violation of federal law."  Children's Hospital and Health Ctr. v. Belshe, 188 F.3d 1090, 1095 (9th Cir.1999), cert. denied, 530 U.S. 1204 2000); Ex Parte Young, 209 U.S. 123, 159-60 (1908).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed."  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984).  While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court.  See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not

1    constitute a waiver of California's Eleventh Amendment immunity).  Furthermore, Congress

2    has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

3           Here, Plaintiff seeks prospective injunctive relief in the form of repairs to address the

4    "unsafe living conditions at C.I.M.", and an order directing Dr. Torres "to look and assess

5    inmates['] injuries more carefully" and "to follow all specialist[s'] medication

6    recommendations", as well as declaratory relief in the form of a "declaration that the acts

7    and omissions described herein violated plaintiff Kevin lee Brown['s] rights under the

8    constitution and laws of the United States.  (Complaint, Attachement at 5.)  However,

9    Plaintiff  is no longer incarcerated at C.I.M., and his claims for injunctive or declaratory relief

10   against C.I.M. officials regarding treatment by C.I.M. officials are therefore moot.  Nelson v.

11   Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir.

12   1995); Preiser v. Newkirk, 422 U.S. 395, 403 (1975).  Accordingly, Ex Parte Young is of no

13   benefit to Plaintiff, and Plaintiff cannot maintain official capacity Section 1983 claims against

14   them.  Edmundson v. MacDonald, 415 Fed. Appx. 838, 838-39 (9th Cir. 2011); Dillev, 64

15   F.3d at 1368-69; Kentucky v. Graham, 473 U.S. 159, 166 (1985); Butler v. Elle, 281 F.3d

16   1014, 1023 n. 8 (9th Cir. 2002).

17          In sum, Plaintiff's official capacity claims are barred against Defendants.  See, e.g.,

18   Town v. Montana, 2010 WL 49812, at *4 (D. Mont. 2010).

19   **V.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT PEREZ.**

20          To state a claim against a particular individual defendant for violation of his civil rights

21   under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of

22   state law, deprived the plaintiff of a right guaranteed under the Constitution or a federal

23   statute.  Karim-Panahi, 839 F.2d at 624.  "A person deprives another 'of a constitutional

24   right, within the meaning of section 1983, if he does an affirmative act, participates in

25   another's affirmative acts, or omits to perform an act which he is legally required to do that

26   causes the deprivation of which [the plaintiff complains].'"  Leer v. Murphy, 844 F.2d 628,

27   633 (9th Cir. 1988), quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

28

1   Thus, supervisory personnel generally are not liable under § 1983 on any theory of

2   respondeat superior or vicarious liability in the absence of a state law imposing such liability.

3   Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Hansen v. Black, 885

4   F.2d 642, 645- 46 (9th Cir. 1989).  A supervisory official may be liable under § 1983 only if

5   the official was personally involved in the constitutional deprivation, or if there was a

6   sufficient causal connection between the supervisor's wrongful conduct and the

7   constitutional violation.  Redman, 942 F.2d at 1446-47; Hansen, 885 F.2d at 646; see also

8   Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984).

9   "[S]upervisors can be held liable for: 1) their own culpable action or inaction in the training,

10  supervision, or control of subordinates; 2) their acquiescence in the constitutional

11  deprivation of which a complaint is made; or 3) for conduct that showed a reckless or

12  callous indifference to the rights of others."  Edgerly v. City and County of San Francisco,

13  599 F.3d 946, 961 (9th Cir. 2010) (internal quotations and citation omitted).

14  Plaintiff alleges that Defendant Perez is responsible for the safety and welfare of

15  inmates housed at C.I.M.  These allegations, however, are insufficient to state a § 1983

16  claim for relief against Perez.  A supervisor's "general responsibility for supervising the

17  operations of a prison is insufficient to establish personal involvement." Redman, 942 F.2d

18  at 1454-55 (internal quotation marks and citation omitted).  For example, Plaintiff sets forth

19  no allegations that Perez reasonably knew that the conditions of confinement at C.I.M.

20  posed a substantial risk of serious harm to Plaintiff.  Likewise, there are no allegations that

21  Perez's actions and/or omissions actually caused Plaintiff's constitutional injuries.  Thus,

22  there is an insufficient causal connection between the alleged constitutional deprivations in

23  the Complaint and Perez.

24   Accordingly, Plaintiff's allegations against Perez must be dismissed.  If Plaintiff

25  chooses to file an amended complaint, he must allege facts demonstrating a specific and

26  direct connection between the deprivation of Plaintiff's constitutional rights and the named

27  defendants.  The allegations are insufficient as presently stated.

28   *************

1    For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO**

2  **AMEND**.

3    If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended

4  Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies

5  discussed above.

6    If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket

7  number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out

8  exactly in accordance with the directions on the form; and (4) be complete in and of itself

9  without reference to the previous complaints or any other pleading, attachment or

10  document.  The Clerk is directed to provide Plaintiff with a blank Central District of California

11  civil rights complaint form, which Plaintiff must fill out completely and resubmit.

12    **Plaintiff is admonished that, if he fails to file a First Amended Complaint by the**

13  **deadline set herein, the Court may recommend that this action be dismissed for**

14  **failure to prosecute and failure to comply with a Court order.**

15

16  DATED: <u>May 7, 2015  </u>                              <u>        */s/ John E. McDermott*        </u>

17                                                                          JOHN E. MCDERMOTT
                                                                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28